## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 10 2017, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bobby Collier,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | August 10, 2017<br><br>Court of Appeals Case No.<br>15A04-1703-CR-560<br><br>Appeal from the Dearborn<br>Superior Court<br><br>The Honorable Sally A.<br>McLaughlin, Judge<br><br>Trial Court Cause No.<br>15D02-1511-F6-363 |

**Brown, Judge.**

Bobby Collier appeals the trial court's order that he serve his previously-suspended sentence. He raises one issue which we revise and restate as whether the trial court abused its discretion in ordering him to serve his previously-suspended sentence. We affirm.

## Facts and Procedural History

On March 9, 2016, the trial court entered an Order on Plea, Judgment of Conviction and Sentence which states that the parties presented a plea agreement, Collier pled guilty, and the court entered judgments of conviction for operating while intoxicated as a level 6 felony, and theft as a class A misdemeanor. Collier was sentenced to concurrent terms of 910 days with 724 days suspended and 365 days with 179 days suspended to probation. The order of probation required that Collier "[n]ot consume alcohol or illegal substances or controlled substances without a prescription" and to "submit to testing for same on request of Probation or Law Enforcement Officer" and that he abide by all conditions of a Veterans Court Participant Agreement and successfully complete Veterans Court. Appellant's Appendix Volume 2 at 69.

On April 26, 2016, Collier's probation officer filed a Request for Veterans Court Sanction Hearing alleging Collier failed to report for a drug screen as required, and on May 2, 2016, the court ordered him to attend seven self-help meetings. On May 26, 2016, the probation officer filed a Second Request for a Veterans Court Sanction Hearing alleging that, by the terms of Veterans Court, Collier was required to abide by a 10:00 p.m. curfew and that he arrived home forty-six

minutes late. On May 31, 2016, the court ordered him to complete eight hours of community service at the VA in Cincinnati. On September 20, 2016, a probation officer filed a Third Request for a Veterans Court Sanction Hearing alleging that, by the terms of Veterans Court, Collier was required to submit valid prescriptions within twenty-four hours and that he submitted to a urine drug screen on September 13, 2016 and tested positive for the opiates of hydrocodone and hydromorphone, and did not provide a valid prescription until September 20, 2016. That same day the court ordered Collier to serve thirty actual days on home detention.

[4] On November 3, 2016, Collier's probation officer filed a Fourth Request for a Veterans Court Sanction Hearing alleging he tested positive for alcohol on October 27, 2016. On November 9, 2016, the probation officer filed an Amended Fourth Request for a Veterans Court Sanction Hearing alleging Collier tested positive for alcohol on October 27 and November 1, 2016. On November 22, 2016, the probation officer filed a Second Amended Fourth Request for a Veterans Court Sanction Hearing alleging Collier tested positive for alcohol on October 27 and November 1, 2016, and failed to attend a required court hearing on November 17, 2016. That same day the court ordered that Collier have two days, or one day with good time credit, revoked to the Dearborn County Law Enforcement Center. On January 3, 2017, Collier's probation officer filed a Fifth Request for sanction alleging that, by the terms of Veterans Court, Collier was required to take all medications as prescribed and that, on December 30, 2016, a field officer "conducted a pill

count and [Collier's] Hydrocodone prescription was empty." Appellant's Appendix Volume 2 at 123.

[5] On January 10, 2017, the State filed a Request for Southeastern Indiana Veterans Treatment Court Termination Hearing alleging in part that on December 30, 2016, a field officer conducted a pill count and Collier's hydrocodone prescription was empty; Collier advised the field officer that he had flushed eighty to eighty-five hydrocodone tablets; on January 3, 2017, Collier advised the field officer that he had been abusing his hydrocodone prescription; on January 3, 2017, Collier did not appear in court and stated he was in the hospital; upon further investigation Collier was seen in the emergency department but also submitted to a drug and alcohol screen and tested positive for alcohol; and on January 8, 2017, he failed to provide a drug screen.

[6] On January 24, 2017, the court held a probation violation hearing at which Collier admitted to the alleged violations. On February 14, 2017, a sentencing hearing was held. Collier indicated that he attended the self-help meetings as ordered; through his time in Veterans Court he attended multiple AA and NA meetings; he was late for his curfew because he was at a birthday party for his niece and lost track of time; he completed the eight hours of community service as ordered; and there was a positive drug screen and he had a prescription for the opiates but did not submit the prescription until later. He indicated he completed the ordered thirty days of home detention. When asked about his positive tests for alcohol on October 27 and November 1, 2016, he testified that

several of his close family members including his grandmother had passed away during the previous year and he "was kind of almost at the point of giving up." Transcript Volume II at 17. When asked if that was "when things started to really go bad for [him] in terms of being successful with the program," Collier responded affirmatively. *Id.* When asked about his missed court hearing in November, he replied he believed that was when he was in the hospital and that he had fallen down that morning.

[7] Collier testified that he was not working, was waiting on disability and had filed a disability claim a year earlier, had been participating in VA services for at least six or seven years, and had been diagnosed with PTSD and two traumatic brain injuries, and when asked if the injuries and PTSD "are all things that extend from your time in the service," he responded affirmatively. *Id.* at 19. He also indicated his substance abuse history dated back as far as he could remember and to his teenage years, that it was at its worst four or five years earlier, and that Veterans Court had helped him. He testified he was the chairperson of his AA classes and that his longest period of sobriety in recent memory was probably ten months which probably occurred after entering Veterans Court.

[8] Collier's probation officer testified that she was aware that Collier has traumatic brain injury and he had shown he was capable of showing up for drug screens and appointments and submitting prescriptions. She testified that Collier "did very well in phase I and a good portion in phase II minus the minor sanctions that [sic] things just kind of escalated." *Id.* at 27. She stated: "As I noted in the

PSI, I think [Collier] said it the best himself. He just gave up. Um, he recalled one (1) Court hearing where a statement was made and he said he just gave up. He felt like he could drink and get away with it, um, and we wouldn't catch him and I think things just escalated." *Id.* The officer testified that, since the Veterans Court program started in 2013, there had been only three terminations. When asked her recommendation, the officer stated:

> Well I mean I don't know how helpful home detention is going to be for [Collier] in regards to um, fees and what not. You know, he has been waiting on disability claim for a really long time. I do know that to be true. So, I don't know how helpful that's going to be for him. Obviously, he can't do work release or anything of the sort like that. So, I mean I think, normally our recommendation when somebody is terminated is to the Department of Corrections because we feel like we've given him the services that we have to offer at this point and I do feel the same way with [Collier].

*Id.* at 28-29.

[9]     The court stated its concerns were that Collier "has voiced he's just given up" and "that the operating while intoxicated which is the underlying offense . . . indicates that he left the scene of an accident, that he hit two . . . separate telephone poles and . . . did not stop" and "so the other concern is . . . his substance abuse left unchecked does affect community safety." *Id.* at 33-34. The court took the matter under advisement. On February 22, 2017, it entered an order revoking Collier's previously-suspended sentence, finding that, due to the nature of the underlying offense and his inability to follow through with the

required conditions of Veterans Court, community safety can best be addressed through incarceration.

## *Discussion*

The issue is whether the trial court abused its discretion in ordering that Collier serve his previously-suspended sentence. Collier does not challenge the finding that he violated his probation; instead, he argues the court abused its discretion in ordering that he serve the entirety of his previously-suspended sentence and asks this court to remand for resentencing. He contends that his violations were characterized by the probation department as primarily minor sanctions, the trial court's reasoning was not fully supported by the facts, he had a valid prescription at the time he tested positive for an opiate, and he had improved during his time with the Veterans Court.

The State maintains that the court did not abuse its discretion, that "Collier repeatedly proved that he is not fit for the program or probation," "[f]or each violation, the court sanctioned Collier more severely than the last, but he was undeterred," the record supports the court's conclusion that Collier poses a risk to community safety, and that his history and attitude toward treatment gave the court little choice but to revoke his suspended sentence. Appellee's Brief at 8.

Ind. Code § 35-38-2-3(h) provides:

> If the court finds that the person has violated a condition at any
> time before termination of the period, and the petition to revoke

is filed within the probationary period, the court may impose one (1) or more of the following sanctions:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.

> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

[13] The Indiana Supreme Court has held that a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). The Court explained that, "[o]nce a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed" and that, "[i]f this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants." *Id.* An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* As long as the proper procedures have been followed in conducting a probation revocation hearing, the trial court may order execution of a suspended sentence upon a finding of a violation by a preponderance of the evidence. *Goonen v. State*, 705 N.E.2d 209, 212 (Ind. Ct. App. 1999).

[14] The presentence investigation report ("PSI") indicates that Collier was convicted of theft in 1994, 1996, and 1997 and of operating a vehicle while intoxicated endangering a person as a class A misdemeanor in 2012. He was

convicted for operating a vehicle while intoxicated as a level 6 felony and theft as a class A misdemeanor and ordered to participate in the Veterans Court program in 2016. The PSI further states that Collier reported that he can recall seeing pictures of himself intoxicated on the kitchen table at the age of five; his father would often give him alcohol; he was regularly consuming alcohol by the age of eleven; he was drinking heavy amounts of alcohol while in the military; following the death of his son his drinking increased; he was prescribed pain medication in 1991 and for fifteen years consumed between twenty and thirty pills per day; he successfully completed a methadone clinic program in 2005; and that following his discharge from the clinic he "started using pills again here and there" and was drinking on a regular basis. Appellant's Appendix Volume 3 at 9. He also reported that he felt "like he was doing really good during the first part of Veterans Court and then just gave up" and that he "doesn't want to go to prison but that it might be easier." *Id.*

[15] The record reveals that Collier admitted that he violated the conditions of his probation on several occasions. After a missed drug screen, the court ordered seven self-help meetings. When he missed his curfew the court ordered eight hours of community service, and when he tested positive for opiates and did not timely provide a prescription the court ordered him to serve thirty actual days of home detention. When he tested positive for alcohol twice and skipped a court hearing, the court revoked two days of his suspended sentence. Collier also admitted that a field officer conducted a pill count and discovered his hydrocodone prescription was empty, that he stated he had flushed the tablets

and advised the officer he had been abusing his prescription, and that he later failed to provide a drug screen. His probation officer testified he initially did well in Veterans Court, then had minor violations, and then "things just kind of escalated." Transcript Volume 2 at 27. She testified that, as Collier had stated, he "just gave up." *Id.*

[16] Given these circumstances, we cannot say that the trial court abused its discretion in ordering Collier to serve his previously-suspended sentence.

## *Conclusion*

[17] For the foregoing reasons, we affirm the trial court's order that Collier serve his previously-suspended sentence.

[18] Affirmed.

Najam, J., and Kirsch, J., concur.